UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Nina Taylor, John Wilson, III, et al., )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>Turner Industries Group, LLC and Turner )<br>Industries, LLC, )<br>)<br>Defendants. ) | **Case: 2:11-cv-00057** |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' EMERGENCY MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS**

Defendant Turner Industries Group, LLC ("Turner") files this Response to Plaintiffs' Emergency Motion to Compel Responses to Discovery Requests and shows as follows:

**INTRODUCTION AND BACKGROUND**

Turner has produced almost 28,000 pages of responsive documents during discovery in this lawsuit. Plaintiffs' "Emergency" Motion to Compel Discovery Responses falsely alleges that Plaintiffs only "recently" discovered that Turner maintains a computer database that contains employee personnel information. (See Motion at 2). Contrary to Plaintiffs' false assertion, on September 15, 2010 (over 4 months before Plaintiffs filed this lawsuit) Plaintiffs obtained an affidavit from Alisha Howard, a former "billing clerk" in Turner's corporate accounting department. (See Exhibit A: Howard Aff.). In the affidavit, Ms. Howard states that she had access "to all hourly employees' pay rates" and to "**the database** of employees who had been terminated." She also proffered testimony concerning "the black employees **listed in Turner's computer system**." (Id.). Moreover, on April 28, 2011, Plaintiffs filed Ms. Howard's affidavit as Exhibit A to their Sur-Reply to a Motion that Defendants had filed in this case See Doc. 20. Thus, for Plaintiffs to claim that they only "recently" discovered that Turner maintains a

computer database containing employee personnel information is a blatant misrepresentation. **Plaintiffs (and their counsel) have known about Turner's computerized database with personnel records for years, and before this lawsuit was commenced.**

Further, as explained more fully below, Plaintiffs' Motion to Compel is untimely. Plaintiffs failed to timely file their Motion during the discovery period in this case, and they have offered no valid excuse for filing it (1) after the close of discovery, (2) after Turner filed numerous dispositive motions, and (3) on the eve of trial. As noted above, Plaintiffs' sole excuse for their untimely filing (i.e., their alleged "recent" discovery that Turner uses computers) is demonstrably false. Given this reality, Plaintiffs' eleventh-hour motion should be denied for this reason alone. Moreover, Defendant's objections (which Plaintiffs utterly fail to address) are meritorious, appropriate and should be sustained.

Plaintiffs filed this lawsuit on January 30, 2011. The Court's Scheduling Order, which was entered on July 6, 2011 set August 3, 2012 as the deadline for completion of discovery. (Doc. 40 at ¶ 5). Turner timely served its Objections and Responses to Plaintiffs' First Combined Discovery Requests on September 6, 2011, and served Plaintiffs with CDs containing over 12,000 pages of responsive documents. (Exhibit B.)[1] Further, Turner has voluntarily supplemented its responses to Plaintiffs' First Combined Discovery Requests 16 times, and it has produced a total of almost 28,000 pages of documents. (Exhibit E.)[2] Plaintiffs' J.D. Edwards payroll records were among the 12,000-plus pages that Turner initially produced. (Exhibit F.) Plaintiffs' payroll records were obviously generated by or from a computer system. (See id.).

---

[1] Turner voluntarily produced those records in advance of the completion of a contemplated protective order, reserving only the right to designate documents as "confidential," once the protective order was completed. (Id.). Plaintiffs chose to return the documents to Turner until the protective order was completed. (Exhibit C.) On October 19, 2011, Turner sent the 12,000-plus pages of responsive documents back to Plaintiffs. (Exhibit D.)

[2] By contrast, Plaintiffs produced approximately 2,500 pages of bates-numbered documents.

Contrary to Plaintiffs' assertions, Turner <u>never</u> represented that it did not maintain a computer system.[3] As noted, Turner produced obviously computer-generated payroll records at the outset of discovery in this case. (<u>See</u> <u>Exhibits B, D, and F.</u>) Further, months before Plaintiffs filed this lawsuit, Plaintiff's own witnesses provided testimony indicating that Turner maintains a computer database regarding its employees. (<u>Exhibit A</u>). Yet, Plaintiffs did not file their Motion until August 12, 2012, more than a week after the discovery deadline expired and after Turner had filed dispositive motions concerning 33 of the 46 Plaintiffs. (<u>See</u> Doc. 133). Plaintiffs' untimely Motion should not be considered by this Court. It should be denied.

## **ARGUMENT**

### A.  Plaintiffs' Motion Is Untimely And Should Not Be Considered By This Court.

In determining whether a motion to compel has been timely filed, courts in the Fifth Circuit "look to the discovery deadline and not the motion-filing deadline." <u>Suzlon Wind Energy v. Shippers Stevedoring</u>, 662 F.Supp.2d 623, 661 (S.D. Tex. 2009). In this regard, a motion to compel must be filed sufficiently ***in advance*** of the discovery deadline to allow it to be heard by the court, and if granted, to allow the compelled discovery to be produced prior to the deadline. <u>Grey v. Dallas I.S.D.</u>, 265 Fed. Appx. 342, 348 (5th Cir. 2008) (district court properly denied plaintiff's motion to compel in a Title VII race discrimination case "because it was filed on the discovery deadline after an extensive discovery period."). <u>Barnes v. Madison</u>, 79 Fed. App'x 691, 699 (5th Cir. 2003) (affirming district court's denial of plaintiff's motion to compel because "[i]t was only in the last days leading up to the May 27, 2002, discovery deadline that

---

[3]  Curiously, Plaintiffs make much of the fact that a Turner witness agreed that "if . . . you wanted to run a report on all of payroll records for all of plaintiffs in this case, that's something the system is capable of doing." (Motion at 7). That is precisely what Turner provided to Plaintiffs on September 6, 2011, and again on October 19, 2011. (<u>See</u> <u>Exhibitss. B, D, and F</u>). Indeed, Plaintiffs' discovery requests do not ask whether Turner maintains a computer system. Plaintiffs appear to assert that Turner's objection that certain requests were unduly burdensome somehow constitutes a denial that Turner has a computer database. That is ridiculous. Plaintiffs' requests were not limited to ESI or computer-generated "spreadsheets." They asked for "any and all documents," which by definition includes <u>paper</u> (non-ESI) documents. Thus, Turner's undue burden objections were and are appropriate.

[plaintiff] began to press the issue with a motion to compel, despite the fact that [plaintiff] had received the defendant's objections to her discovery requests months earlier."); Turnage v. Gen. Elec., 953 F.2d 206, 209 (5th Cir. 1992) (affirming district court's denial of plaintiff's request to conduct potentially dispositive discovery, "given (i) the imminence of trial, (ii) the impending discovery deadline, and (iii) [plaintiff's failure to request an inspection earlier]").

The Scheduling Order set August 3, 2012 as the deadline for completion of discovery. (Doc. 40 at ¶5). Plaintiffs filed their Motion more than a week after the discovery deadline, and after Turner filed numerous dispositive motions. Plaintiffs' Motion is untimely and should not be considered by this Court. See Suzlon, 662 F.Supp.2d at 661 (denying the defendant's motion to compel solely because it was untimely filed two weeks after the discovery deadline expired).

Indeed, Turner will be severely prejudiced if a motion to compel is considered and granted at this time. This case has been pending for 18 months, and Plaintiffs have had a year to conduct discovery. Turner has filed dispositive motions concerning each Plaintiff. Given the impending initial trial setting (October 2012) and the Daubert motion deadline of September 5, 2012 (See Doc. 94), additional discovery now would disrupt the Court's schedule substantially. Plaintiffs' Motion should not be considered, but instead should be denied by this Court.

**B.     Plaintiffs' Discovery Requests Regarding Non-Parties Should Be Denied.**

Plaintiffs do not address the merits of a single objection Turner made to any of Plaintiffs' discovery requests, but merely dismiss the objections as being "voluminous and duplicative." Plaintiffs therefore wholly ignore the fact that they, as the moving party, have the burden under Rule 37 "to show clearly that the information sought is relevant to the case and would lead to admissible evidence." Export Worldwide v. Knight, 241 F.R.D. 259, 263 (W.D. Tex. 2006)(citing McClain v. Mack Trucks, 85 F.R.D. 53, 57 (E.D. Pa. 1979)). Plaintiffs' approach is

untenable as "courts should not allow parties to 'roam in the shadow zones of relevancy to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" Boyd v. American Airlines, 2002 WL 32360294, at *1 (N.D. Tex. Oct. 7, 2002) quoting Spina v. Our Lady of Mercy Med. Ctr., 2001 WL 630481, at *1 (S.D.N.Y. June 7, 2001).

More particularly, the discovery requests at issue seek employment information related to Turner employees who are not a party to this lawsuit. This information is only relevant and discoverable in a disparate treatment case like this if the other employee for whom the information is being sought is an actual "comparator," which means that the other employee is **similarly situated** to the plaintiff and his or her circumstances are **nearly identical** to those of the plaintiff. See Wyvill v. United Cos. Life Ins., 212 F.3d 296, 302, 304 (5th Cir. 2000) ("To establish a claim for disparate treatment, [plaintiff] must show that [defendant] gave preferential treatment to a [person of a non-protected class] under **nearly identical** circumstances."). The Fifth Circuit has expressly set forth what constitutes a comparator:

> We have considered the requirement for one employee to be similarly situated to another on any number of occasions. Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is so because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'

Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259–60 (5th Cir. 2009).

As set forth below, Plaintiffs have made no attempt to limit the discovery requests at issue to seek only information pertaining to similarly situated employees. Instead, Plaintiffs essentially filed this lawsuit against Turner blindly alleging disparate treatment and now, after the fact, seek to discover all employee records in an attempt to locate a comparator to try to

5

prove their case. This should not be permitted. <u>See</u> <u>e.g.</u> <u>Gavenda v. Orleans County</u>, 182 F.R.D. 17, 25, 29 (W.D.N.Y. 1997) (denying plaintiff's motion to compel personnel files of non-party employees in disparate treatment case because the "request seeks the personnel files of all employees, not just those similarly situated."); <u>White v. Allstate</u>, 2003 WL 21488221, at *2 (N.D. Tex. April 25, 2003) (finding request for non-party employee evaluations and statistical performance data irrelevant because "[t]he bald assertion of a disparate treatment claim does not by itself entitle a plaintiff to disclosure of confidential personnel information regarding all employees, similarly situated or not.").

      **1.**      **Plaintiffs' First Combined Discovery Requests**

As an alleged deficient discovery response, Plaintiffs' primarily reference Turner's response to "Lead Plaintiff John Wilson Request for Production No. 4." (<u>See</u> Motion at 9-10). This is revealing because it establishes Plaintiffs' fundamental misunderstanding of the applicable law. In Wilson's RFP No. 4, he seeks "any and all documents showing the employees hired at Plaintiff Wilson's location during Plaintiff Wilson's employment with Turner, their races, qualifications, pay scale, and job titles." Plaintiffs state that this "request asked Turner to identify 'comparator' individuals—relevant evidence in the Title VII context." However, Plaintiffs apparently failed to realize that <u>Wilson only alleges hostile work environment and constructive discharge claims and does **not** allege any claim for failure to hire, failure to promote, or unequal pay</u>. (<u>See</u> Doc. 66 at ¶¶ at 98–104). Thus, information relating to the race, qualifications, and pay of Wilson's coworkers is wholly irrelevant to his claims in this lawsuit. Further, even if Wilson had asserted a pay, hire, or promotion claim (which he does not), the request itself is breathtakingly overly broad. It seeks "any and all documents" and seeks to discover information regarding all "employees hired at Plaintiff Wilson's location," including

6

"job titles," not simply employees who are similarly situated to Wilson (i.e., employees with the same job title, in the same division, with the same supervisor). See Lee, 574 F.3d at 259–60.

This is a pattern throughout the discovery requests at issue:

- Virgil Ethridge RFP #2 asks Turner to produce "any and all documents" relating to promotions and raises of painters' helpers during Ethridge's employment. This request seeks irrelevant information as Ethridge makes no allegation that he was discriminated against with respect to his pay as a painter's helper and he admitted at his deposition that he did not apply for the only promotion referenced in the Second Amended Complaint.

- Joseph Finch INT #2 and RFP #2 both seek information related to the pay of "tool room supervisors." The requests seek information that is not relevant to Finch's claims because Finch was never employed as a "tool room supervisor." Further, RFP #2 is not limited as to time. Nevertheless, Turner produced documents regarding the pay rate of "tool room attendants," which Finch was. RFP #3 requests "any and all documents relating" to Turner's policy against cell phones and "any records" related to the suspension of Finch and all "other employees" for violating the policy. Turner produced all employment and discipline records it had for Finch. This request is overly broad as it provides no limitation with respect to time, the kind of records being sought, the job title for the "other employees," a location where the "other employees" work, or the supervisor of the "other employees."

- Kerry Garvin RFP #7 seeks "any documents" showing a record of points accumulated by Garvin and records of "points" accumulated by all other Turner employees in 2010. Turner produced all documents it had related to Garvin's attendance points. This request is overly broad and unduly burdensome because it does not limit the type of documents being sought and because it seeks documents related to every single employee at Turner, irrespective of location, job title, supervisor, or who received a single "point" in the year 2010. This requests seeks documents from the personnel files of every Turner employee working in Paris in 2010.

- Junior Hall INT #2 requests the identity of "all employees" who were either laid off or terminated by Turner throughout Hall's employment and an explanation for why they were laid off. Hall alleges no claim of discrimination related to his termination for failing a drug test. (See Doc. 66 at ¶¶ 156-163). Thus, the information sought in this request is irrelevant. The request is also overly broad because it seeks information related to "all employees" who were laid off or terminated, irrespective of job title, location, or supervisor. Likewise, Hall's RFP #8, which requests "all records" of disciplinary action for "all employees" who violated "any Turner policy on tardiness, attendance, or error," is overbroad and unduly burdensome because it is not limited with respect to time, employee location, supervisor, or job title. This requests seeks documents from the personnel files of every Turner employee working in Paris since Turner acquired the facility in 1999.

- Billy Hill RFP #1 requests "all documents" relating to the pay rates and raises of "all other employees" who worked in the paint department during Hill's employment. The request is overly broad and unduly burdensome because it is not limited to the employees who had the

7

same job title and supervisor as Hill. This requests seeks documents from the personnel files of every Turner paint department employee from 2007 and 2008. <u>Hill RFP #2</u> requests "any and all documents" relating to Hill's pay raises. In response Turner produced a payroll report containing Hill's entire historical pay data (as it has for all plaintiffs). <u>Hill RFP #6</u> requests "any and all documents" showing the qualifications and hire dates of "all Turner employees" who were hired to work in maintenance during Hill's employment. However, Hill admits he asked for a paint department position on his job application and he was given a paint department position. Thus, this request is overly broad and seeks irrelevant information because it seeks information relating to Turner maintenance hires in all locations and job sites, and is not limited to similarly-situated White employees who were allegedly hired instead of Hill for the maintenance position he allegedly sought in Paris.

- <u>Tony Holt INT #1 and RFP #2</u> seek the identity and "any and all documents" related to the pay rate for all persons who were hired as helpers over the past 9 years. These requests are overly broad and seek irrelevant information as they are not limited to helpers who worked in the same department (blasting) under the same supervisor as Holt during the relevant time period.

- Contrary to the Plaintiffs' Motion to Compel, <u>Cornelius Jeffrey RFP #2</u> seeks "any and all documents relating to racial slurs or displays of graffiti," and not to "hire dates, pay rates, raises, race/gender, for helpers and tack welders in January 2010." Turner has no documents relating to Jeffrey's complaints about graffiti or racial slurs at Turner because Jeffrey never complained about it. In fact, Jeffrey himself admitted in his deposition that he never complained about any graffiti or racial statements.

- <u>Johnny McNeil RFP#2</u> seeks "all documents" relating to the pay rates of all paint mixers during McNeil's employment. McNeil's request is overly broad as it is not limited to paint mixers who worked at the same location and for the same supervisor as McNeil. Further, McNeil admitted at his deposition that that he is not complaining about any white paint mixers being paid more than him, rendering the information sought by this request irrelevant.

- <u>Cedric Pruitt RFP #2</u> seeks "all documents" relating to "the pay rate of a full-time blaster" in February of 2007. This request is overly broad as it does not reasonably specify what documents it is seeking and it is not limited by location. Further, the documents sought are not relevant because Pruitt was not a "blaster" in February of 2007. Pruitt was a blaster *helper* in February 2007 and was not promoted to "blaster" until a later date. Nonetheless, Turner produced all of Pruitt's payroll documents.

- <u>Charles Sampson RFP #1</u> seeks "all documents" related to the pay rate of all painters' helpers at Turner for the past 2 1/2 years. This request is overly broad as it does not reasonably specify what documents are being sought and it is not limited to the relevant time period. It also is overly broad and seeks irrelevant information because it is not limited to painters' helper who worked at the same location and had the same supervisor as Sampson. Indeed, Sampson admitted that the alleged "White comparator" identified in his allegations of pay discrimination, Dennis Milton, is in fact Black. Nonetheless, Turner produced Sampson's payroll documents and its Paris pay scale which includes painter helpers.

8

- Kenneth Beard RFP #2 seeks "any and all documents" including "job applications, resumes, job descriptions, job qualifications, pay rates, and record of pay increases for all crane operators" employed between December 17, 2007 and July 20, 2008. Beard was only a crane operator from June 2008 to July 2008. This requests seeks the personnel files of every Turner crane operator over a 9 month period, regardless of Bay or supervisor. Beard does not allege a failure to promote or hire claim. (See Doc. 66 at ¶¶ 283-88). Thus job applications, resumes, job descriptions, and job qualification information is irrelevant. Further, this request is overly broad and seeks irrelevant information because it is not limited to the relevant time frame and it is not limited to White operators, if any, who worked at the same Bay for the same supervisor as Beard.

- Corey Cooper RFP #4 seeks "any and all documents" relating to Turner employees hired to work in the blast department during Cooper's employment, including their race, hire dates, and pay rate. In addition to being overly broad, this request seeks information that is irrelevant because Cooper does not allege he was denied a promotion to the blast department or that he was paid less than any other employee in the blast department. His only complaint in this lawsuit is a hostile work environment claim. (See Doc. 66 at ¶¶ 289-93).

- Carl Eddington INT #1 seeks the identity, including "race and **gender**," of all employees who were laid off and who were hired from April of 2005 to October of 2008. This request is overly broad and seeks irrelevant information because Eddington does not allege a claim for disparate treatment based on his gender or with respect to his hiring or termination. (See Doc. 66 at ¶¶ 306-320). Eddington RFP #5 seeks production of "all documents" related to "job applications, resumes, pay rate, record of pay increases, and job descriptions of "all other employees" hired to work in the bending department from April 2005 to October 2008. This request is overly broad and seeks irrelevant information as it is not limited to the relevant timeframe and it is not limited to White benders who worked at the same location under the same supervisor as Eddington.

- Richard Hearn RFP #2 seeks "any and all documents" relating to "all employees, including their race and **gender**," who worked in Bay 6 from January 2004 to November of 2009 "showing their pay rates, record of raises, job applications, hire dates, and evaluations." This request is overly broad and seeks irrelevant information as Hearn does not allege a claim of gender discrimination (See Doc. 66 at ¶¶ 321-327) and the request is not limited to White employees who worked in the same division and had the same job title and supervisor as Hearn. Hearn was a painter and a blaster and he makes no allegations in his lawsuit about trying to get a job in Bay 6. (See Doc. 66 at ¶¶ 321-327). Hearn RFP #8 requests "any and all documents" relating to all "employees, including their race and **gender**" who were rehired on August 26, 2010." This request is overly broad and seeks irrelevant information as Hearn does not allege a claim of gender discrimination (See Doc. 66 at ¶¶ 321-327) and is not limited to White employees who were hired for a position for which Hearn actually applied.

- Earl Robinson RFP #3 seeks "all documents" relating to the starting pay of all laborers at Turner's Paris, Texas facility. This request is overly broad, unduly burdensome, and seeks irrelevant information as it is not limited in any way with respect to time and fails to describe

9

the requested documents with reasonable particularly. By way of further context, Robinson only worked as a laborer for roughly two months in early 2008 before he was promoted to the position of helper and given a pay raise. Robinson RFP #4, seeks "all documents" related to starting pay of all tackers at Turner's Paris, Texas facility. This request seeks irrelevant information because Robinson does not allege he was discriminated against with respect to his pay as a tacker or that he applied for a tacking position (See Doc. 66 at ¶¶ 355-366), and it is overly broad because it is not limited as to time.

- Terrence James RFP #4 seeks "any and all documents" relating to employees, including their "race and **gender**" who were laid off in March 2010. This request is overly broad and seeks irrelevant information because James does not allege gender discrimination (See Doc. 66 at ¶¶ 394-401) and it does reasonably describe the documents sought. Further, this request seeks information related to all Turner layoffs, is not limited to the job site or location that James worked at, the position James held, or who reported to James' supervisor. James RFP #5 seeks "any and all documents" relating to "all employees, including their race and **gender**" who were transferred in March 2010. This request is overly broad and seeks irrelevant information as James does not allege gender discrimination and because it is not limited to those employees who worked at the same job location, held the same job title, or worked under the same supervisor.

- Oren Brew RFP #5 seeks "any and all documents" relating to employees, including their "race, **gender**, hire dates, and qualifications, who were promoted to foreman during Brew's employment. This request is overly broad and seeks irrelevant information because Brew does not allege gender discrimination and because it is not limited to employees who were hired for positions to which Brew applied, if any, and the job sites Brew actually worked at. (Doc. 66 at ¶¶ 422-431). Brew has been hired for temporary turn around jobs and short term jobs as boilermaker for Turner at third-party facilities on at least 20 different occasions from 1997 through June 2012. This request asks for information about every foreman Turner has hired from 1997 to June 2012 at every facility and job site, regardless of whether Brew worked at the facility or even applied for a foreman position.

- Michael Daniels RFP #2 and #4 seek "any and all" documents relating to "all employees" hired into pipefitter and maintenance positions at the Longview, Texas location at any time, including their "race and **gender**, qualifications, hire date, and requests for transfer. These requests are overly broad and seek information that is irrelevant as Daniels does not allege gender discrimination. (Doc. 66 at ¶¶ 465-472). Further, the request is overbroad as it is not limited in any way with respect to time, jobs he actually applied for, or who positions who reported to the same supervisor. Daniels only worked for Turner on two occasions for about two weeks (for a total of roughly four weeks) in the first half of 2010 (January and May). Daniels RFP #5 seeks "any and all" documents relating to Daniel's lay off and "all" documents showing other employees who were laid off in March 2010, including their "race, **gender**, and position. At deposition, Daniels did not dispute that he was let go as a part of a reduction in force on January 22, 2010, and that he was rehired in April 2010. Accordingly, any layoffs in March 2010 are irrelevant to Daniels' claims. This request is also overly broad and seeks irrelevant information because Daniels does not allege gender discrimination.

10

In short, Plaintiffs have not even attempted to carry their burden under Rule 37 of proving that the information sought by the subject discovery requests are relevant and would lead to the discovery of admissible evidence. As can be seen above, each of the subject requests is overly broad and seeks information that is irrelevant to the respective Plaintiffs' claims. The Court should deny Plaintiffs' Motion with respect to each of the subject requests.

### 2. Plaintiffs' Second Combined Discovery Requests Nos. 13, 14, 15, and 18

Plaintiffs' Motion to Compel also identifies four (4) Requests for Production (Nos. 13, 14, 15 and 18) from Plaintiffs' Second Combined Discovery Requests in support of its request that Turner be compelled to produce its entire J.D. Edwards computer database. Three (3) of these document requests (Nos. 13, 14 and 15) are, on their face, abusive fishing expeditions that were and are objectionable on numerous grounds. <u>Without exaggeration, Requests 13, 14, and 15 seek every scrap of paper (and presumably every piece of electronic information) Turner has related to each and every employee at its Paris, Texas facility, in all positions, in all departments, that Turner has ever hired, fired, or disciplined</u>. The other request Plaintiffs cite (Request No. 18) seeks "wage or salary scales" that Turner produced months ago. For certain, J.D. Edwards does not contain "wage or salary scales." Plaintiffs' arguments relating to Requests Nos. 13, 14, 15, and 18 should be rejected.

**a.  Plaintiffs' Request for Production 13, 14, and 15.**

Requests for Production Nos. 13, 14, and 15 provide as follows:

**13.  <u>All documents</u>,** summaries, and logs **related to persons hired by Turner at its Texas facilities.**
**14.  <u>All documents</u>,** summaries, and logs **related to persons terminated by Turner at its Texas facilities.**
**15.  <u>All documents</u>**, summaries, and logs **related to persons disciplined by Turner at its Texas facilities.**

(Pls' Sec. Combined Discovery Requests, Ex. 3 to Pls' Motion (Docket Entry 133-3)) (emphasis added).

11

Plaintiffs represent to the Court that their requests were limited to a 10 ½-year time period from January 1, 2002 to the present.[4] This is factually inaccurate. There are no date restrictions whatsoever limiting these document requests in Plaintiffs' Second Combined Requests for Production.[5]

A simple, straight-forward reading of these three (3) requests reveal that they effectively seek every piece of paper, email, and report, and every single piece of data relating to all employees hired, fired, or disciplined in Turner's Paris facility, including every personnel file, medical file, and workers' compensation file of all Turner's Paris employees in all departments, as well as all other documents, invoices, emails, reprimands, and reports that mention any Paris employee, since Turner's inception. Plaintiffs do not allege a pattern and practice claim or a disparate impact claim. Nonetheless, these requests literally seek an unquantifiable number of pieces of paper and data (certainly, at least, in the millions) about all of Turner's Paris employees, that have no connection whatsoever to Plaintiffs' disparate treatment claims and/or allegations in this lawsuit. These requests are patently abusive and textbook definitions "fishing expedition" discovery.

Turner timely asserted specific valid objections to each of these requests, including that they are overbroad and not reasonably calculated to lead to the discovery of admissible evidence because:

- Plaintiffs are not asserting pattern and practice claims in this lawsuit;
- they seek documents related to facilities where some Plaintiff are not alleged to have worked or sought work;
- they fail to describe the documents sought with reasonable particularity;
- they seek documents relating to unnamed persons who are not plaintiffs in this lawsuit; and
- they contain no limitations as to time frame. (See Exhibit 4 to Pls' Motion (Doc. 133-4)).

---

[4] See Note 22 on page 15 of Pls' Motion (stating "Each Request for Production was limited in time from January 1, 2002 to present").
[5] Plaintiff may be attempting to bootstrap a date buried in the "Definitions" section of its discovery which is not incorporated into *any* document request or even mentioned anywhere else in Plaintiffs' Second Combined Discovery Requests. In this incorporated "definition" the "phrase 'Discovery Period' includes the time period beginning Jan. 1, 2002, and ending on the date of your response to this discovery request." As reflected above, Requests for Production 13, 14, 15, and 18 make no reference to a "Discovery Period" and are open-ended.

Further, Turner also asserted meritorious objections citing specific case law because these requests sought personnel information and personnel files of non-party employees, which (1) are generally irrelevant and not discoverable,[6] and (2) invade the privacy rights of individuals who are not parties to this lawsuit, and Plaintiffs have not shown that their asserted need for the non-party employees' personnel information outweighs the privacy interest of the non-party employees whose information is sought.[7] (See Id..). Lastly, Turner objected because these requests were and are a pure, unadulterated fishing expedition. (See Id..).

The Supreme Court has emphasized the individualized nature of proof needed in individual plaintiff discrimination cases:

> The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while "at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking."

Cooper v. Federal Reserve Bank, 467 U.S. 867, 876 (1984). In cases involving individual plaintiffs such as this one, the Court must look at evidence "directed at [the individual plaintiff]." Gilty v. Village of Oak Park, 919 F.2d 1247, 1252 (7th Cir. 1990). An individual plaintiff alleging discrimination "is not litigating common questions of fact, but the discrete question of

---

[6] Defendant's objections cited the following: e.g., Onwuka v. Federal Express Cork, 178 F.R.D. 508, 516 (D. Minn. 1997); Raddatz v. Standard Register Co., 177 F.R.D. 446, 448 (D. Minn. 1997); accord Whittingham v. Amherst College, 164 F.R.D. 124, 127 (D. Mass. 1995); White v. Allstate, No. 3-02-CV1733-R, 2003 WL 21488221, at *2 (N.D. Tex. Apr. 25, 2003); Gavenda v. Orleans County, 182 F.R.D. 17, 29 (W.D. N.Y. 1997); Zukoski v. Philadelphia Electric Co., No. Civ. A. 93-4780, 1994 WL 637345, at *3 (E.D. Pa. Nov. 14, 1994).

[7] Defendant's objections cite the following: Raddatz, 177 F.R.D. at 447; Whittingham, 164 F.R.D. at 127-28; Prouty v. National Railroad Passenger Corp., 99 F.R.D. 545, 549 (D.D.C. 1983) ("The Court finds that the names of [defendant's] employees are not relevant to plaintiffs suit"); EEOC v. District of Columbia Public Schools, 217 F.R.D. 12, 15 (D.D.C. 2003) ("The information plaintiff seeks, i.e., the teaching disciplines of every teacher employed by DCPS at the time of the RIF, is not directly relevant to the plaintiff's claims that DCPS discriminated against [plaintiff] on the basis of her age when they terminated her."); Waters v. United States Capitol Police Bd., 216 F.R.D. 153, 159 (D.D.C. 2003) (denying, in a Title VII race discrimination case, plaintiffs discovery request for information regarding "the name of each person who [currently] work[ed] for the defendant, his or her race, date of hire, current position and grade.").

whether the employer discriminated against the plaintiff in a specific instance." Lowery v. Circuit City, 158 F.3d 742, 761 (4th Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999). See EEOC v. Texas Instruments, 100 F.3d 1173, 1185 (5th Cir. 1996) (rejecting statistics in individual case because they did not "analyze the facts concerning individual" plaintiffs); LeBlanc v. Great Am. Ins., 6 F.3d 836, 848 (1st Cir. 1993) ("the central focus" in an individual case is "how a particular individual was treated, and why"), cert. denied, 511 U.S. 1018 (1994); Healy v. N.Y.Life Ins., 860 F.2d 1209, 1218 (3rd Cir. 1988) (statistical analysis is legally meaningful only where it focuses on "the behavior of the relevant decision makers").

Plaintiffs assert 46 individual claims of disparate treatment and harassment, but seek documents (and now, alleged J.D. Edwards database information) that go galaxies beyond the boundaries of their individual claims and stray far from the relevant time period parameters allowed by law. Plaintiffs made no effort to actually look at each individual Plaintiff's own lawsuit allegations and/or deposition testimony to identify potentially "similarly situated" employees that are in "nearly identical" employment circumstances. Rather, Plaintiffs' Requests in Nos. 13, 14, and 15 simply cast an indiscriminate dragnet, asking for every document and electronic piece of information Turner has relating to all of its Paris employees, regardless of their department, position, supervisor, work history, or time period of employment. The discovery Plaintiffs seek is not permitted under the law. See Pacheco v. Mineta, 448 F.3d 783, 793 (5th Cir. 2006) (discovery regarding employees not managed by alleged discriminator overbroad and irrelevant); Sallis v. Univ. of Minn., 408 F.3d 470, 478 (8th Cir. 2005) (denying university-wide discovery, because plaintiff only worked in one department); Roy v. Austin Co., 194 F.3d 840, 843 (7th Cir. 1999) (evidence of conduct of different supervisors does not further a plaintiff's ability to make out a claim). Turner's objections should be sustained.

b. **Plaintiffs' Request for Production 18.**

Request for Production No. 18 seeks "[a]ll documents reflecting Your wage or salary scales for each job classification utilized by You at Your Texas Operations." (See Ex. 3 to Pls' Motion). Subject to its objections, Turner produced its "wage or salary scales" documents, and they are bates-labeled Turner 25748 though Turner 25750. (See Ex. 5 to Pls' Motion). <u>These documents contains the wage scales for 69 different positions that Turner has at its Paris, Texas facility. It was produced even though Plaintiffs never sought nor held a substantial number of these 69 positions.</u> Turner does not have "salary or wage scales" for its non-Paris employees because Turner employees' wages in positions at third-party sites outside of Paris are typically determined by Turner's clients (*i.e.*, Citgo, Sasol, Westlake. Exxon-Mobil, Huntsman, DuPont, etc.), are specifically provided for in contracts with those clients, and are a "hard dollar amount," not a range. This was borne out by the deposition testimony of Darren Smith, Turner's Human Resource representative for Nederland/Beaumont/Port Arthur :

> Q. When you say each of those classifications would be paid the same, is there a range for possible starting salary or is there just a hard dollar amount?
>
> A. There -- it would be a hard dollar amount. For instance, all of the pipefitters would make the same rate. All of the iron workers would make the same rate. Based on classification, if they're a journeyman A class. If they're a B class, all B class would make the same.

(Darren Smith Depo. p. 45, Exhibit G).

Turner's J.D. Edwards database does not contain "salary or wage scales." Indeed, Plaintiffs' counsel's contention that wage or salary scales "could have easily been produced" out of J.D. Edwards database, is inaccurate and not supported by evidence cited in their Motion.

For all of the reasons addressed above, Plaintiffs' Motion to Compel should be denied.

       Respectfully submitted,

       /s/ Michael D. Mitchell
       Michael D. Mitchell #00784615
       OGLETREE, DEAKINS, NASH,
       SMOAK & STEWART, P.C.
       500 Dallas, Suite 3000
       Houston, Texas 77002-4709
       (713) 655-5756 (telephone)
       (713) 655-0020 (facsimile)

       ATTORNEYS FOR DEFENDANT
       TURNER INDUSTRIES GROUP, LLC

OF COUNSEL:

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

Stephen E. Hart # 00793911
James R. Staley # 24008071
Flyn Flesher # 24059756
Martin A. Rodriguez # 24071129
500 Dallas Street, Suite 3000
Houston, Texas 7702
(713) 655-0855 (telephone)
(713) 655-0020 (facsimile)

## CERTIFICATE OF SERVICE

     I hereby certify that on this 21st day of August, 2012, the foregoing Response was filed electronically with the Clerk of the Court using the Court's electronic filing system, which will send notification of such filing to the following:

Eric M. Albritton, Esq. #00790215
ema@emafirm.com
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
(903) 757-8449 (telephone)
(903) 758-7397 (facsimile)

Jay D. Ellwanger, Esq. #24036522
jellwanger@dpelaw.com
Stefanie T. Scott, Esq. #24061617
sscott@dpelaw.com
DINOVO PRICE ELLWANGER
  & HARDY LLP
7000 North MoPac Expressway, Suite 350
Austin, Texas 78731
(512) 539-2626 (telephone)
(512) 539-2627 (facsimile)

T. John Ward, Jr., Esq. #00794818
jw@jwfirm.com
WARD & SMITH LAW FIRM
P.O. Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

OF COUNSEL:

James A. Vagnini, Esq.
Robert M. Valli, Jr., Esq.
Sara W. Kane, Esq.
Deborah Rubin, Esq.
VALLI KANE & VAGNINI, LLP
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180 (telephone)
(516) 706-0248 (facsimile)

       /s/ Michael D. Mitchell
       Michael D. Mitchell